The document below is hereby signed.

Signed: July 17, 2015



_S. Martin Teel, Jr._
_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| BELTWAY LAW GROUP, LLP, | ) | Case No. 14-00380 |
| | ) | (Chapter 7) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter |

MEMORANDUM DECISION RE MOTION FOR
SUMMARY JUDGMENT AND ATTORNEY'S FEES, COSTS, AND DAMAGES

This case was commenced by an involuntary petition filed by Susan Ray, who asserted that she was entitled to do so pursuant to § 303(b)(3) of the Bankruptcy Code (11 U.S.C.) because, she claimed, the debtor Beltway Law Group, LLP, is a partnership and she is a general partner of the debtor. Beltway did not file an answer but responded to the petition by filing a *Motion for Summary Judgment and Attorney's Fees, Costs, and Punitive Damages* (Dkt. No. 4). I dismissed the involuntary petition on July 24, 2014, on the basis that Susan Ray is not a "general partner" and was thus not eligible to file the involuntary petition on that

basis.  As I explained in detail in a written decision of August 6, 2014 (entered by the clerk on August 7, 2014), Beltway is a limited liability partnership and none of its partners is liable by virtue of such status for Beltway's debts; therefore, Beltway is not a "partnership" and Susan Ray is not a "general partner" for purposes of § 303(b)(3).  The dismissal mooted part but not all of Beltway's motion.  The remaining issues (relating to Beltway's request for attorney's fees, costs, and damages) are the subject of this decision.

I

A preliminary issue must first be dealt with.  Ray claims in her briefs[1] that the attorney who has entered an appearance for Beltway, Timothy R. Clinton, is not actually counsel for Beltway because he was not authorized by Beltway to represent it, and that therefore Clinton's fees cannot be awarded as "in favor of the debtor" as contemplated by § 303(i).  I reject Ray's contention.

Beltway has only two partners, both holding the title of

---

[1] The parties have filed several briefs related to this decision.  Beltway filed a Motion for Summary Judgment (Dkt. No. 4, including exhibits 1-80), a Supplement (Dkt. No. 32, including a Supplemental Statement of Material Facts and exhibits 81-87), a Second Supplement (Dkt. No. 42, including a Second Supplemental Statement of Material Facts and exhibits 88-107), and a Reply (Dkt. No. 65, including exhibits duplicatively numbered 88-93). Ray filed a *pro se* Opposition and Supplemental Information and Authorities (Dkt. Nos. 17 and 20) and then through counsel filed a Supplemental Opposition (Dkt. No. 38, with exhibits) and a Second Supplemental Opposition (Dkt. No. 64).

Managing Partner: Susan Ray and Marc Chafetz.  Thus, when Ray filed the involuntary petition against Beltway, Chafetz was the only remaining partner who was not adverse to Beltway in the bankruptcy case.  Chafetz then retained Clinton to represent Beltway in this bankruptcy case.  At a hearing of July 24, 2014, I requested the parties to brief the issue of whether Chafetz had the authority to retain Clinton to represent Beltway in this case.  In the parties' subsequent briefing, neither party cited any case law or treatise directly on point.

    Ray's argument rests mainly on these facts: a separate, pre-existing arbitration is pending (filed by Ray pursuant to the Beltway partnership agreement and seeking a dissolution of Beltway) and, in that arbitration, the arbitrator did not authorize Clinton to represent Beltway in this bankruptcy case.  As Beltway points out, however, the arbitrator did not bar Clinton from representing Beltway; rather, he declined to rule on the issue of who may represent Beltway in this bankruptcy case and left the issue for this court to resolve.  It is noteworthy that the arbitrator *did* authorize Clinton, as retained by Chafetz, to represent Beltway in the two pending North Carolina state court actions.  The arbitrator reasoned:

> One lawsuit is brought by [Susan] Ray's husband and the other brought by a business entity solely within the control of [Susan] Ray.  **The Arbitrator can conceive of no situation where [Susan] Ray is in a position to objectively represent the interest of [Beltway] in these lawsuits.**  While the Arbitrator initially was

> unwilling to permit [Chafetz] to represent the
> interests of [Beltway] in the state lawsuits, the
> submission of additional facts, consideration of the
> nature of animus between the Managing Partners [Ray and
> Chafetz], allegations and distrust between [Susan] Ray
> and [Chafetz] and the relationship of [Susan] Ray to
> the two plaintiffs in the state actions now convince
> the Arbitrator that [Chafetz's] counsel [Clinton] is in
> the best position to represent [Beltway] in the two
> state actions for the purpose of moving to dismiss in
> favor of arbitration and/or moving to compel
> arbitration. . . .
>
> I have made no ruling as to whether or not Mr. Chafetz
> or Mr. Clinton or, for that matter, Ms. Ray may
> represent [Beltway] in the Bankruptcy matter. . . . I
> do not think it appropriate for me to presume to make a
> ruling as to which of the partners may represent
> [Beltway] before Judge Teel.  Judge Teel is more than
> able to make the determination as to the proper
> representative of [Beltway] before him.

Exh. 81 (arbitrator email) to Beltway's Supplement (Dkt. No. 32) (emphasis added).

Beltway's partnership agreement (an unsigned copy attached as Exhibit 3 to Beltway's Motion) requires a majority vote of the Managing Partners for all decisions unless otherwise specified in the agreement.[2]  ¶ 3.1.  With only two Managing Partners, this means that decisions must be unanimous.  However, under the Uniform Partnership Act of 2010, D.C. Code §§ 29-601.01 *et seq.*, which applies to limited liability partnerships such as Beltway,

---

[2]  In the absence of a partnership agreement, the general rule is that a partner has implied authority to defend an action against the partnership. *See, e.g.*, *Maglo v. Weaver*, 77 A.2d 499 (N.J. Super. A.D. 1951) (noting that this rule does not extend to entering an appearance for a co-partner not served with process); *Phelps v. Brewer*, 9 Cush. 390 (Mass. 1852) (same).

4

every partner must "refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership." D.C. Code § 29-604.07(b)(2). This provision of the code is unwaivable by agreement. D.C. Code § 29-601.04(b)(3). Ray voluntarily placed herself in a position adverse to Beltway by filing the involuntary petition against it; it would not be consistent with the above-referenced D.C. Code provisions to permit her to select Beltway's attorney to defend Beltway after she placed it in that defensive posture. Thus, we are left with Chafetz as the only non-adverse Managing Partner available to make decisions about the representation of Beltway. Moreover, Beltway's partnership agreement permits unilateral action by one partner in cases of "significant business emergency" in order "to protect the Partnership from significant loss or damage." ¶ 5.4. The filing of an involuntary bankruptcy petition by one Managing Partner against the partnership would seem to be such an emergency, permitting the remaining Managing Partner to take necessary steps, including the retention of counsel, to protect Beltway. Indeed, the arbitrator drew an analogous conclusion when authorizing Chafetz to retain Clinton to defend the two North Carolina state court matters instigated by entities related to Susan Ray, finding (as cited above) that he could "conceive of no situation where [Susan] Ray is in a position to objectively

5

represent the interest of [Beltway] in these lawsuits." Finally, the arbitrator, who Ray appears to concede could authorize an attorney to represent the debtor in litigation, has effectively authorized this court to decide who may represent the debtor in this case. For all these reasons, I reject Ray's contention that Clinton does not represent Beltway for purposes of this bankruptcy case.

II

Under § 303(i), where, as here, an involuntary petition is dismissed on grounds other than the parties' consent, the court has discretion to award attorney's fees and costs against the petitioner and in favor of the debtor. I apply a totality of the circumstances test to determine whether such an award is appropriate, as do most courts. *See Higgins v. Vortex Fishing Sys. (In re Vortex Fishing Sys.)*, 379 F.3d 701, 705-06 (9th Cir. 2004); *In re Quantum Cool, LLC*, Case No. 12-00260-8-SWH, 2013 WL 3733182 at *11 (Bankr. E.D.N.C. July 15, 2013); *Rosenberg v. DVI Receivables, XIV, LLC (In re Rosenberg)*, 471 B.R. 307, 317 (Bankr. S.D. Fla. 2012); *In re Skyworks Ventures, Inc.*, 431 B.R. 573, 576 (Bankr. D.N.J. 2010); *In re Scrap Metal Buyers of Tampa, Inc.*, 233 B.R. 103, 110 (M.D. Fla. 2000). The analysis begins with a rebuttable presumption that the debtor is entitled to an award of reasonable fees and costs. *Higgins*, 379 F.3d at 707. The petitioning creditor has the burden to establish, under

totality of the circumstances, that factors exist which overcome the presumption. *Id.* The following factors should be considered in examining the totality of the circumstances:

> (1) the merits of an involuntary petition, (2) the role of any improper conduct on the part of the alleged debtor, (3) the reasonableness of the actions taken by petitioning creditors, (4) the motivation and objectives behind filing the petition, and (5) other material factors the court deems relevant.

*Id.*

Ray has not overcome the presumption that the debtor is entitled to an award of reasonable fees and costs. In fact, the only serious argument that Ray makes against awarding fees is the already-rejected argument that Clinton does not represent the debtor. Because Ray has fallen well short of overcoming the presumption, I find that Beltway is entitled to award of reasonable attorney's fees and costs. Such fees include those incurred in pursuing Beltway's request for attorney's fees and costs. *See, e.g.*, *In re Atlas Mach. & Iron Works, Inc.*, 190 B.R. 796, 803 (Bankr. E.D. Va. 1995). However, such fees do not include those for time spent litigating Beltway's bad faith arguments, which I reject below, because Beltway has agreed that, if its bad faith arguments were rejected, "it would be appropriate in those circumstances to reduce an award of attorney's fees by the amount of time spent litigating those unsuccessful arguments" (Beltway's Supplement, p. 7). By separate order, I will set deadlines for Beltway to submit a

7

statement of fees with appropriate supporting documentation, consistent with this decision, and for Ray to oppose any fees which she believes unreasonable.

III

In addition to attorney's fees and costs, Beltway seeks punitive damages and, according to its Supplement to its motion, compensatory damages.  Section 303(i)(2) permits the court to award damages proximately caused by the filing of the involuntary petition and punitive damages against any petitioner who filed the petition in bad faith.  To determine bad faith, I apply, like most courts, a test which combines both an objective standard (whether a reasonable person in the position of the creditor would have filed the petition) and a subjective standard (examining the petitioner's actual motivation), under the totality of the circumstances.  *Tucker v. Ohio Valley Amusement Co. (In re Tucker)*, No. 5:11CV38, 2011 WL 5192801, at *2 (N.D.W. Va. Oct. 31, 2011), *aff'd* 487 Fed. Appx. 826 (4th Cir. 2012); *In re U.S. Optical, Inc.*, No. 92-1396, 991 F.2d 792 (table), 1993 WL 93931, at *4 (4th Cir. Apr. 1, 1993) ("Most courts ... apply both a subjective and objective test.").  The burden of proof is on the debtor: "[a] filing is presumed to be in good faith, and the existence of bad faith must be proven by the debtor by a preponderance of the evidence." *U.S. Optical*, 1993 WL 93931, at *3.

The parties have filled a vast expanse of paper with their debate over whether Ray filed the petition with subjective bad faith.  Beltway argues that Ray filed the petition in an attempt to harass Beltway and Chafetz and to delay and manipulate other legal proceedings including the arbitration and two lawsuits in North Carolina.  Beltway points to Ray's alleged misbehavior in those other proceedings as evidence of her overarching scheme against Beltway and Chafetz.  The gist of Ray's response is that her actions during other proceedings outside this court are not relevant here.  She also disputes some, if not all, of the misbehavior listed by Beltway and accuses Beltway and Clinton of similar misconduct in those other proceedings.

However, I do not need to reach the question of whether Ray filed the petition with subjective bad faith because Beltway has failed to meet its burden to show that the filing meets the standard of objective bad faith.

Beltway argues that objective bad faith exists because a reasonable person in Susan Ray's shoes should have known that she was not eligible to be a petitioning creditor as a general partner of a partnership because Beltway is not a partnership but a limited liability partnership.  Ray is not eligible to be a petitioner, it is true, as I determined in dismissing the involuntary petition; however, Beltway has not shown that a reasonable person in Ray's position should have correctly come to

this conclusion.  My conclusion that a partner of a limited liability partnership is not eligible to be a petitioning creditor in these circumstances was based on a nuanced interpretation of the intersection of the Bankruptcy Code and District of Columbia law.  No reported decision had explained how a limited liability partnership, with a managing or general partner under state law, could not be treated as a partnership under the Bankruptcy Code.  As Ray points out, "it took this Court nearly 11 pages, of both bankruptcy and non-bankruptcy law analysis to both reach and explain [its] conclusion."  I am not convinced that a reasonable person in Ray's shoes must have figured this out.  Indeed, while not dispositive on the issue, even the two attorneys before the court in this case, Clinton for Beltway and Sherman for Ray, both mistakenly believed at the time Ray filed the involuntary petition that Ray was eligible to file by virtue of her status as a Managing Partner in Beltway.  *See* Ray's Second Supplemental Opposition (Dkt. No. 64), p. 7 (citing a July 7, 2014, email from Clinton to Sherman stating, "Unlike her husband, she clearly has standing to file the petition (as you and I discussed)..."); Beltway's Reply (Dkt. No. 65), p. 3 n.4 (stating that Clinton had not examined the issue of Ray's standing at that time because he had been relying on Sherman's statements regarding Ray's standing).

    To support its argument that objective bad faith exists,

Beltway points out that the involuntary petition form, Official Form 5, requires the petitioner to select one of the following four boxes under the heading "Type of Debtor (Form of Organization)":

>     Individual (Includes Joint Debtor)
>     Corporation (Includes LLC and LLP)
>     Partnership
>     Other (If debtor is not one of the above entities,
>        check this box and state type of entity below)

and argues that this should have alerted a reasonable petitioning creditor that the Bankruptcy Code treats Beltway as a corporation and not a partnership for purposes of determining whether she was eligible to be a petitioning creditor.  I decline to adopt Beltway's reasoning.  A checkbox on a standard form is not sufficient by itself in these circumstances to create a standard for objective bad faith.

Beltway also argues (in its Second Supplement and Reply) that Ray meets the standard for objective bad faith because the petition was substantively frivolous because Ray knew she would never have been able to establish that Beltway was generally not paying its debts as they became due.  Beltway bases this argument largely on the contents of a document Ray submitted in the arbitration titled a "Memorandum Regarding Winding Up Issues" and dated April 4, 2014 (and attached as Exh. 57 to Beltway's Motion).  In the document, Ray listed what she believed were Beltway's liabilities.  Beltway argues that each liability listed

is either subject to a bona fide dispute or was never invoiced to Beltway or otherwise presented for payment by Beltway. This is simply insufficient to establish as a matter of law that Ray knew at the time that she filed the involuntary petition on July 3, 2014, that she could not establish that Beltway was generally not paying its debts as they became due.

IV

An appropriate order follows.

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.