The document below is hereby signed.

Signed: September 14, 2016



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| BELTWAY LAW GROUP, LLP, | ) | Case No. 14-00380 |
| a/k/a American Law Partners, | ) | (Chapter 7) |
| | ) | Not for publication in |
| Debtor. | ) | West's Bankruptcy Reporter. |

## MEMORANDUM DECISION AND ORDER RE MOTION TO COMPEL

This addresses the *Motion to Compel Discovery* (Dkt. No. 88) filed by Marc Chafetz and the debtor against Susan Ray. The *Motion* seeks in part to compel the production of documents that were withheld by Ms. Ray under the assertion of the attorney-client privilege.[1] At an October 15, 2015 hearing, and as memorialized in an order of that same date (Dkt. No. 96), the court set a deadline for Ms. Ray to supplement her objection to the *Motion* by filing any additional documents from the arbitration record that she contends show that there was *not* a

---

[1] The *Motion* also sought to compel answers to interrogatories. The court has previously granted that part of the *Motion*.

waiver of the attorney-client privilege.[2] Ms. Ray has supplemented her opposition in accordance with the court's order, and has likewise submitted the six disputed documents under seal for *in camera* review.

The issues pertinent to whether the court should compel the production of any of the six documents submitted to the court for *in camera* review are: (1) whether the documents would, absent waiver, be protected by the attorney-client privilege; (2) whether Ms. Ray waived the attorney-client privilege in the arbitration proceeding by repeatedly invoking a reliance on advice of counsel defense, and if so, the scope of that waiver; (3) whether Mr. Ray waived the privilege by virtue of disclosures made to the arbitrator, and if so, the scope of that waiver; and (4) whether the waiver of the privilege (if such a waiver is found) applies to any of the documents.

For reasons explained in more detail below, I find that the six documents are covered by the attorney-client privilege, and although Ms. Ray has disclosed two confidential attorney communications, the resulting waiver of privilege is narrow and

---

[2] At the October 15, 2015 hearing, Ms. Ray's counsel took the position that Beltway had cherry-picked excerpts from the arbitration record favorable to its position, and in doing so had painted an incomplete picture of the circumstances under which the alleged waiver occurred. I rejected the notion that I could not evaluate the question of waiver absent the benefit of the entire record, but I invited Ms. Ray to submit any materials from the arbitration that she contends would bear on whether there had been a waiver.

does not apply to the subject matter of the six documents withheld by Ms. Ray on the basis of privilege. In other words, I find that Mr. Ray has not waived the privilege as to these six documents. Accordingly, I will deny the part of the *Motion* that seeks to compel the production of the documents.

I

The *Motion* contends that Ms. Ray has waived the attorney-client privilege by virtue of her repeated reliance on an advice of counsel defense in the arbitration proceeding. The *Motion* contends that such waiver extends to communications between her and her attorneys regarding this bankruptcy case. Specifically, the *Motion* (at 5-6) contends:

> In the related Arbitration, Mr. Chafetz argued, *inter alia*, that "the Rays' two bankruptcy petitions [were] part of a pattern of delay." Ex. 8, 13-14 (capitalization altered). In response to that motion, Mrs. Ray invoked the "advice of counsel" defense no fewer than eight times, with regard to literally all of the factual allegations alleged in this matter. Ex. 9, 41 (regarding "escrow" of Beltway funds and payments to herself and her attorneys); *id.* at 45 ("Mrs. Ray retained Counsel and ultimately, upon the advice of counsel, initiated the Arbitration"); *id.* at 69-70, 106, 119, 125-27, 166-68 (denying she fraudulently converted Beltway funds by claiming a right to "reimbursement" and "compensation" because "[a]t all times, Mrs. Ray was acting upon the advice of counsel"); *id.* at 136-42 (defending her "intent" with regard to a claim for punitive damages in general because "[a]t all times. [sic] Mrs. Ray was acting upon the advice of counsel"). If a communication is relevant to these proceedings, then Mrs. Ray has waived any attorney-client privilege that might [have] otherwise existed over it.

The *Motion*'s Exhibit 9, to which the *Motion* points in support of

3

the claim of waiver, is Ms. Ray's opposition to a *Motion for Partial Summary Judgment*, filed in the arbitration proceeding.

A.

The D.C. Circuit applies the following test to determine if the attorney-client privilege attaches to a communication:

> The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984) (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-50 (D. Mass. 1959); *Zelaya v. UNICCO Serv.* Co., 682 F. Supp.2d 28, 38 (D.D.C. 2010) (specifying that *In re Sealed Case* provides the controlling test for determining if the privilege attaches). Having reviewed all of the documents submitted to me for *in camera* review, I conclude that they all easily satisfy this test, subject to the question of whether the privilege has been waived.

It is well-established that a litigant can waive the attorney-client privilege if she raises advice of counsel as a defense to liability. The waiver, itself, however, is triggered

not by the assertion of the defense, but rather by the disclosure of an otherwise privileged communication in support of the asserted defense. *See Abbott Laboratories v. Baxter Travenol Laboratories, Inc.*, 676 F. Supp. 831 (N.D. Ill. 1987) (defendant's production of three written opinions in support of an advice of counsel defense is what effectuated a waiver); *JJK Mineral Co., LLC v. Swiger*, 292 F.R.D. 323, 332 (N.D.W. Va. 2013) (an opponent's failure to raise attorney-client privilege as a defense to a request for production of protected documents, which request was motivated by the opponent's assertion of a reliance on advice of counsel defense, and the opponent's production of some protected documents, constituted waiver); *Fuji Photo Film Co. v. Benun (In re Benun)*, 339 B.R. 115, 132 (Bankr. D.N.J. 2006) (attorney's advice is placed at issue when litigant seeks to limit liability by describing the attorney's advice, but such advice is not placed at issue if litigant specifically waives advice of counsel allegations alluded to in earlier discovery or motion practice). Stated another way, in order to have waived the privilege, Ms. Ray must have disclosed the content of a communication such that it would be unfair to foreclose an inquiry into the substance of all other communications relating to the same subject matter, lest Ms. Ray be permitted selectively to disclose only those communications that work in her favor. *See JJK Mineral Co., LLC v. Swiger*, 292 F.R.D. 323, 332 (N.D.W.

5

Va. 2013) ("The underlying principle supporting waiver when a party relies upon the advice of counsel defense is fairness.  A party should not be allowed to rely on self-serving documents in its defense while withholding potentially damaging information under the guise of the attorney-client privilege.").

If, during the course of the arbitration, Ms. Ray disclosed the content of any confidential communications between her and her attorneys, either defensively or to establish a claim against her adversary in the arbitration, she has waived the attorney-client privilege as to all other communications on that same subject.  *United States v. Plache*, 913 F.2d 1375, 1380 (9th Cir. 1990), quoted in *United States v. Brugnara*, 2015 WL 1907513, at *6 (N.D. Cal. Apr. 23, 2015).  Once such a waiver is made, "the privilege is generally lost for all purposes and in all forums."  *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1416 (Fed. Cir. 1997), quoted in *Potomac Elec. Power Co. v. United States*, 107 Fed. Cl. 725, 727 (Fed. Cl. 2012); *Navajo Nation v. Peabody Holding Co.*, 255 F.R.D. 37 (D.D.C. 2009) (the D.C. Circuit "applies a 'strict' rule pertaining to issue-injection waiver . . . . [and] once a party voluntarily waives privilege that privilege is relinquished for all purposes and in all circumstances thereafter. . . .") (internal quotations omitted).

It is thus necessary to evaluate each instance Ms. Ray

allegedly relied upon advice of counsel in defense of her position in the arbitration, and consider whether, in asserting that defense, she disclosed the content of a privileged communication.  If I find that she did disclose a confidential communication, I must then determine the subject matter to which it relates and whether the documents listed on Ms. Ray's privilege log and submitted to this court for *in camera* review fall within the scope of that waiver.

### B.

The *Motion* points to eight instances in which Ms. Ray invoked an advice of counsel defense in her response to a motion for summary judgment filed in the arbitration.  Beltway contends that this gave rise to a sweeping waiver as to all otherwise privileged communications relevant to the remaining dispute in this bankruptcy case.  I will consider each portion of the record cited to by Beltway and Chafetz separately, and the extent to

which a waiver, if any, resulted.[3]

1.

First Reference to Reliance on Advice of Counsel

Ms. Ray's first reference to reliance on the advice of counsel, as identified by the *Motion*, is found on pages 40-41 of Ms. Ray's response to the summary judgment motion filed in the arbitration, in which she states:

> 225. Mrs. Ray was advised by counsel that it is necessary and proper for any fees resulting from client fees should be deposited into a separate account. Because receipt of funds from client fees was imminent, Mrs. Ray, through Counsel opened the requisite accounts and disbursed funds in accordance with permissions already in place.
> 226. Mrs. Ray's permission to disburse funds had not been withdrawn by Mr. Chafetz nor had any change in the accepted operating procedures been requested or made.
> 227. Mr. Chafetz was fully aware BDS Systems would need to be reimbursed for expenses and paid for services rendered, from the initial fee settlements (Ex 27).
> 228. Mr. Chafetz later withdrew permission for Mrs. Ray to disburse funds, at which time Mrs. Ray ceased making any disbursements without permission.
> 229. Allegations that Mrs. Ray's actions, or the

---

[3] Beltway's previous Motion to Compel Discovery, or in the Alternative, to Strike (Dkt. No. 43) raised the argument that Ms. Ray's reliance on her pro se status in support of her good faith defense in this proceeding gave rise to a waiver of the attorney-client privilege with respect to certain otherwise privileged communications between Ms. Ray and her attorneys regarding the filing of this bankruptcy case. The court entered an order dismissing that motion without adjudicating the merits. *See* Dkt. No. 61. The only basis for waiver asserted in the instant motion, however, is Ms. Ray's reliance on the advice of counsel defense in the arbitration. In prosecuting this motion, Beltway and Chafetz have not sought to revive their earlier argument that Ms. Ray's reliance on her pro se status resulted in a waiver of the privilege.

> actions of her former Counsel were unlawful is false. The allegations are designed to morally assassinate Mrs. Ray and her former attorneys and to further drive a wedge between her and her former Counsel.
>     230. Furthermore, Mrs. Ray, at all times, was acting was acting upon advice of counsel and without fraudulent intent.

Ex. 9 at 40-41.  In this instance, Ms. Ray disclosed a confidential communication with her attorney, to wit, that her attorney advised her "that it is necessary and proper for any fees resulting from client fees should be deposited into a separate account."  It follows that she has waived the privilege with respect to the subject matter of that disclosure.  I conclude that the subject matter of that disclosure includes communications regarding the handling of client fees and the appropriate account into which such fees should be deposited.

2.

Second Reference to Reliance on Advice of Counsel

The second instance of Ms. Ray referring to her reliance on the advice of counsel is found on page 45 of her response to the summary judgment motion filed in the arbitration proceeding in which she states that "Mrs. Ray retained Counsel and ultimately, upon the advice of counsel, initiated Arbitration . . . ." Ex. 9 at 45.  This reference to Ms. Ray's reliance on the advice of counsel does not include the disclosure of a confidential communication, and the statement does not appear to have been asserted defensively.  Rather, the reference to reliance on the

advice of counsel appears to be little more than window dressing to Ms. Ray's description of what transpired, to wit, she initiated the arbitration.  Obviously Ms. Ray relied upon the advice of counsel in initiating the arbitration as is evidenced by counsel's filing the arbitration on Ms. Ray's behalf.  The court rejects the argument that this constitutes a waiver of the attorney-client privilege.

3.

Third Reference to Reliance on Advice of Counsel

The next instance, cited to by Beltway and Chafetz, of Ms. Ray contending that she was acting upon the advice of counsel was in response to the assertion that:

> Mrs. Ray and BDS unlawfully, fraudulently, and in bad faith converted $43,850 in Beltway's funds for their personal use in October 2013, claiming a right to "reimbursement" of funds they did not spend and a right to "compensation" that they did not have as a matter of law[.]

Ex. 9 at 69.  Ms. Ray responded to that allegation by stating: "Mrs. Ray was acting upon the advice of counsel and in a manner consistent with established procedure and prior approval of Movant."  Ex. 9 at 70.  Ms. Ray's assertion that she relied upon the advice of counsel defense in this instance was not accompanied by the disclosure of any confidential communications, and did not give rise to a waiver.  If Ms. Ray ever disclosed the content of a privileged communication to prove the merits of this defense, that would constitute a waiver.  Likewise, if Ms. Ray

10

refused on the basis of privilege to produce documents to her opponent in the arbitration relevant to this defense, she would be forced to choose between relinquishing the privilege or waiving the right to rely on the defense.  At this juncture, however, the defense in the arbitration proceeding is not supported by the disclosure of a confidential communication and there is no waiver.

4.

Fourth Reference to Reliance on Advice of Counsel

The next instance of Ms. Ray asserting her reliance on the advice of counsel in the arbitration proceeding is in response to the following allegation:

> 32. **MOVANT ASSERTS**: Mr. Chafetz asserts *again*: Mrs. Ray (Via BDS) unlawfully converted At Least $80,248.40 from Beltway Between December 6, 2012 and October 2013.

Ms. Ray responded to this allegation by stating:

> **DISPUTED**: To show unlawful conversion, one must show intent.
> a.  At all times. Mrs. Ray was acting upon the advice of counsel and in a manner consistent with established procedure and prior approval of Movant.

Ex. 9 at 106.  Again, invoking the defense without disclosing a confidential communication does not constitute a waiver of the attorney-client privilege.  To demonstrate waiver, Beltway would need to point to a disclosure on Ms. Ray's part that sought to lend evidentiary support to Ms. Ray's contention that her reliance on the advice of counsel validates her argument that she

was acting in good faith. On this record, all we have is an allegation of reliance without Ms. Ray divulging the content of what she relied upon. Such a defense in the arbitration proceeding would necessarily fail if not supported by information regarding the substance of the advice Ms. Ray relied upon, and establishing the substance of the advice would require the disclosure of confidential communications. On the limited record before me, and without having any evidence that a confidential communication was disclosed in support of the asserted defense, I cannot find that this constituted waiver.

5.

Fifth Reference to Reliance on Advice of Counsel

The next instance of Ms. Ray asserting her reliance on the advice of counsel in the arbitration proceeding is again made without an accompanying disclosure. The allegation to which she was responding reads:

> 35. Mrs. Ray (Via BDS) Unlawfully Converted $43,850 from Beltway in October 2013

Ms. Ray's response was as follows:

> **DISPUTED**: Mrs. Ray absolutely denies that she fraudulently and in bad faith converted $43,850 in Beltway's funds.
>
> a.   To show fraud or unlawful conversion, one must show intent.
>
> > • At all times. Mrs. Ray was acting upon the advice of counsel and in a manner consistent with established procedure and prior approval of Movant.

12

Ex. 9 at 119. This defense, asserted with no attempt to describe the substance of the advice allegedly relied upon, does not disclose a confidential communication and does not give rise to a waiver of the attorney-client privilege.

6.

Sixth Reference to Reliance on Advice of Counsel

The next citation to the record pointed to by the *Motion* (Ex. 9 at 125-27) is incomplete. The *Motion* fails to include all of the assertion to which Ms. Ray was responding, but the court can glean from the excerpt provided that it related to Mr. Chafetz's "claim for conversion of these funds." Ex. 9 at 125 (incomplete paragraph at top). In any event, the context of the cited pages makes clear that it was an allegation of improper handling of funds similar to the earlier allegations:

> c. At all times Mrs. Ray was acting on the advice of counsel.
>
> - The first attorney partner, Ms. Rutu Dalal insisted that all funds from fee settlements should be deposited into an IOLTA account. Mrs. [Ray] Had [sic] not [sic] access to that account (on her own accord)[.]
> - Mr. Chafetz disagreed and upon information and belief did not maintain the original BLG IOLTA account[.]
> - However, in speaking with numerous attorneys, Mrs. Ray learned that in fact, fee settlements should go into an IOLTA so she questioned her then counsel who also agreed the funds should be deposited into an IOLTA account.

Ex. 9 at 125-26.

In this instance, Ms. Ray disclosed a confidential communication in support of her assertion that she was acting on the advice of counsel in her handling of the funds. She describes a conversation between her and her attorney about fee settlements and the propriety of those settlements being deposited in IOLTA accounts. Having disclosed this confidential communication to defend against allegations of mishandling of funds, Ms. Ray has waived the attorney-client privilege as to communications relating to the subject of the proper way to handle fee settlements.

7.

Seventh Reference to Reliance on Advice of Counsel

The seventh instance of Ms. Ray relying on an advice of counsel defense, Ex. 9 at 166-68, is in all material respects identical to the sixth instance discussed above, and relates to the propriety of fee settlements being deposited in IOLTA accounts. Here, once again, Ms. Ray states:

f. At all times Mrs. Ray was acting on the advice of counsel.

- The first attorney partner, Ms. Rutu Dalal insisted that all funds from fee settlements should be deposited into an IOLTA account. Mrs. [Ray] Had [sic] not [sic] access to that account (on her own accord)[.]
- Mr. Chafetz disagreed and upon information and belief did not maintain the original BLG IOLTA account[.]
- However, in speaking with numerous attorneys, Mrs. Ray learned that in fact, fee settlements should go into an IOLTA **so she questioned her then counsel**

> **who also agreed the funds should be deposited into an IOLTA account.**

Ex. 9 at 166-67 (emphasis added). Here, Ms. Ray again discloses the content of a confidential communication. As already discussed above, having disclosed this confidential communication to defend against allegations of mishandling of funds, Ms. Ray has waived the attorney-client privilege as to communications relating to the subject of the proper way to handle fee settlements.

8.

Eighth Reference to Reliance on Advice of Counsel

Beltway and Chafetz's final citation to the arbitration record, Ex. 9 at 136-42, involved Ms. Ray's response to a claim for punitive damages. The conduct for which such damages were sought, again, dealt with alleged mishandling of funds, which Chafetz apparently characterized as "fraudulent conversion," with Ms. Ray responding:

> f. To show fraud, one must show intent. At all times. Mrs. Ray was acting upon the advice of counsel and in a manner consistent with established procedure and prior approval of Movant.

Ex. 9 at 140-41. This assertion by Ms. Ray of reliance on the advice of counsel is not accompanied by the disclosure of a confidential communication and did not give rise to a waiver of the attorney-client privilege.

II

One of the documents at issue is an e-mail from John Ray (Ms. Ray's husband) to Jeffrey Sherman (who represented Mr. Ray in a prior involuntary case against the debtor and who represents Ms. Ray in *this* involuntary case).  In the privilege log submitted by Sherman on behalf of Ms. Ray, Sherman has listed the document as subject to Ms. Ray's claim of privilege.  The *Motion* does not question that if Mr. Ray is entitled to treat the e-mail as privileged, so is Ms. Ray.  The *Motion* contends that Mr. Ray has waived the attorney-client privilege over the requested documents because he "voluntarily disclosed both the substance of his conversations with Mr. Sherman and his reasons for filing and consenting to the dismissal of his involuntary bankruptcy petition against Beltway."  In support of this contention, Beltway and Chafetz attach an email from Mr. Ray to the arbitrator.  *See* Ex. 7 at 3-4.  Although Mr. Ray refers with some frequency to his attorneys in that email, he does not disclose any confidential communications and thus did not waive the privilege.

On page 3 of the email, in describing what transpired in the bankruptcy court, Mr. Ray indicates that he "made arrangement for counsel and counsel attended."  The fact that Mr. Ray was represented by counsel and had counsel present at a hearing is not a matter of privilege, and sharing that information with the

arbitrator does not constitute the disclosure of a confidential communication.

On that same page, Mr. Ray makes several comments that include reference to his attorney. He states:

> I am assuming that Mr. Clinton did not believe my attorney would be aware of your ruling that quickly and believed he could be heard without Judge Teel knowing of your immediate ruling. Only after my attorney brought your ruling to the judge's attention (after Mr. Clinton had argued from some time in his role as Beltway Counsel) did my attorney make the assumption that Mr. Clinton was not going to bring your ruling to Judge Teels [sic] attention and take it upon himself to do so.

Mr. Ray's description of what happened in the bankruptcy proceeding and his assessment of Mr. Clinton's motives is not a matter of privilege. Likewise, Mr. Ray's comment about assumptions made by his attorney would appear, at best, to be speculation about why his attorney brought the arbitrator's ruling to my attention. That does not rise to the level of a disclosure.

At the bottom of that same page, Mr. Ray describes a conversation between his attorney and Mr. Clinton. Any conversation occurring between Mr. Clinton and Mr. Ray's attorney is not a privileged communication, and Mr. Ray's attempt to characterize the substance of such a conversation does not implicate the privilege. While describing that conversation, Mr. Ray states that "[m]y attorney was quite correct in his belief that it is likely that at least some Beltway creditors will not

17

pay monies owed Beltway because they are aware of the ongoing arbitration and are also aware that Beltway is not in a position to enforce its claims against them." Given the context in which this statement is made, it must be viewed as Mr. Ray's defense of the position taken by his attorney when talking with Mr. Clinton, and not as the disclosure of a communication between Mr. Ray and his attorney. I find no wavier of the attorney-client privilege by Mr. Ray arising from the email submitted by Beltway and Chafetz in support of their *Motion*.

### III

I have reviewed the six documents submitted for *in camera* review. None of them fall within the subject matter of the two privileged communications disclosed by Ms. Ray in the arbitration proceeding. Ms. Ray was entitled to withhold those documents from production on the grounds of privilege.

### IV

In accordance with the foregoing, it is

ORDERED that the *Motion to Compel Discovery* (Dkt. No. 88) is DENIED with respect to the part thereof seeking an order compelling Ms. Ray to produce documents.

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.