The document below is hereby signed.

Signed: January 27, 2017



_S. Martin Teel Jr._

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| BELTWAY LAW GROUP, LLP, | ) | Case No. 14-00380 |
| | ) | (Chapter 7) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

<u>MEMORANDUM DECISION RE MOTION TO QUASH</u>

Voyrs, Sater, Seymour and Pease LLP has filed a *Motion to Quash* (Dkt. No. 84), objecting to a September 1, 2015 subpoena served upon Elizabeth Simon and Vorys, Sater, Seymour, by counsel for Beltway Law Group, LLP and Marc Chafetz. In the fall of 2013, Ms. Simon and Voyrs, Sater, Seymour and Pease LLP ("Arbitration Counsel") were retained as counsel to Ms. Ray in an arbitration proceeding pending in the District of Columbia. Although they withdrew as counsel on April 17, 2014, they continued to participate in the arbitration after that date in order to address a motion for fees, costs and sanctions filed by Marc Chafetz.

The *Motion to Quash* contends that the requested documents are protected by the attorney-client privilege and the

work-product doctrine, and that the document request is overly broad, burdensome, and seeks documents not relevant to the one remaining issue in this case, to wit, whether Ms. Ray filed this bankruptcy case in bad faith within the meaning of 11 U.S.C. § 303(i)(2).

Ms. Simon filed an affidavit in support of the *Motion to Quash*, and at a December 2, 2015 hearing, the court received that affidavit and the attached exhibits into evidence.  Beltway and Chafetz filed a response to that affidavit, stating, *inter alia*, that they are voluntarily narrowing the scope of their subpoena as follows.  First, they no longer request any review of hard copy documents and seek to review only the emails and attachments.  Second, they have withdrawn the following requests: 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, and 30.  The subpoena is treated as revised accordingly.

As explained in more detail below, I will grant the *Motion to Quash* in part and deny it in part.  Ms. Ray's waiver of the attorney-client privilege is much narrower than Beltway and Chafetz contend.  In those instances where a request implicates the attorney-client privilege (as is the case with the majority of the requests) Arbitration Counsel has shown that the production will require an extensive privilege review, as to the majority of requests.  Nevertheless, I find that such review does not present an undue burden, particularly in light of the

provisions of Fed. R. Civ. P. 45(d)(2)(B)(ii) regarding
reimbursement of "significant expenses resulting from compliance"
with a subpoena.  I will, however, modify several of the requests
to limit the applicable time period for which documents are
required to be produced.

I

I will start by addressing three issues presented by the
*Motion to Quash* that can easily be disposed of.

First, I reject the argument that the subpoena must be
quashed because it failed to satisfy the procedural requirements
applicable under Rule 2004.  In its opposition brief, Beltway and
Chafetz clarified that the subpoena is pursued as discovery in a
contested matter, not under Rule 2004.  Accordingly, Rule 2004
and its procedural requirements do not apply, and the objection
is overruled accordingly.

Second, and consistent with my oral ruling at a December 2,
2015 hearing in this matter, the court rejects the argument that
the debtor ought to be required to seek the requested documents
from other available sources before putting Arbitration Counsel
to the burden of producing the documents sought by the subpoena.
The debtor is entitled to look to Arbitration Counsel for these
documents, and I will not require Beltway and Chafetz to exhaust
other possible sources before pursuing the subpoena against
Arbitration Counsel.  I deny the *Motion to Quash* to the extent it

3

relies on this argument.

Third, and consistent with the court's ruling at the December 2, 2015 hearing, the court finds that no attorney-client relationship existed between Arbitration Counsel and John Ray. Accordingly, Request No. 2, seeking production of "[a]ll communications to which You and John Ray were a party, regardless of whether other individuals were also parties," are not protected by the attorney-client privilege or the work-product doctrine.  Arbitration Counsel objects that, even if no privilege applies, this request is overly broad.  Given the limited context in which such communications could have arisen between Arbitration Counsel and John Ray, I overrule this objection. Accordingly, the motion to quash is denied as to request No. 2, and Arbitration Counsel is directed to produce those documents without further delay.


II

The court rejects the argument that documents and communications that relate to or were generated in connection with the arbitration are categorically irrelevant to Beltway's inquiry into Susan Ray's good faith in the filing of this bankruptcy case.  Beltway seeks to establish that Ms. Ray's conduct meets the standard for objective bad faith because Ray knew she would never be able to establish, as required under 11

4

U.S.C. § 303(h)(1), that Beltway was generally not paying its debts as they became due unless such debts were the subject of a bona fide dispute as to liability or amount. Because the arbitration involved, in part, disputes regarding Beltway's finances, it follows that at least some of the communications generated incident to the arbitration relate to Ms. Ray's knowledge of Beltway's financial condition, the nature of Beltway's debts, and whether those debts were being paid as they came due or were the subject of a bona fide dispute as to liability or amount.[1]

Likewise, Beltway and Chafetz's attempt to establish Ms. Ray's subjective bad faith in the filing of this bankruptcy case relies, in part, on the theory that the petition was filed in an attempt to harass Beltway and Chafetz and to delay and manipulate other legal proceedings, including the arbitration and two lawsuits in North Carolina. To make this showing, the debtor and Chafetz seek discovery with respect to Ms. Ray's conduct in other proceedings. Although this is not the venue to litigate every alleged misdeed Beltway and Chafetz attribute to Ms. Ray, and it

---

[1] The court denied summary judgment on the objective bad faith issue when disposing of Beltway's summary judgment motion because the limited evidentiary record did not permit the court to find, as a matter of law, that Ms. Ray's conduct constituted objective bad faith. In anticipation of trial, however, Beltway and Chafetz remain free to pursue discovery in support of their contention that Ms. Ray's filing of the petition constituted objective bad faith.

is not the venue for them to engage in discovery to establish the
full evidentiary record of claims they think they may have
against Ms. Ray by virtue of such misconduct, Beltway and Chafetz
are entitled to use discovery tools to build the evidentiary
record in support of the theory of subjective bad faith (and the
theory of objective bad faith) that they advance in this case,
which in some instances involves inquiry into events that
occurred in other proceedings.[2]

## III

The subpoena seeks documents from Ray's former attorneys,
and absent a finding that the relevant privilege has been waived,
many of the requested categories of documents are, by their very
nature, likely to be protected from production either by the

---

[2]  In the *Motion to Quash*, Arbitration Counsel contends that
the only remaining issue in dispute is "Ms. Ray's subjective good
faith and the objective good faith of a reasonable person in
determining that a partner of a limited liability partnership
would be eligible to initiate an involuntary petition." *Motion*
at 5.  I reject that contention. Although this case was
dismissed due to Ray's lack of statutory authority to commence
the case, there were arguably other grounds for dismissal (*e.g.*,
the debtor was not an eligible candidate for involuntary relief
under § 303(h)(1)).  When evaluating an award of fees for an
improperly filed involuntary petition, the court is looking at
the totality of the circumstances, and not just at whether Ms.
Ray had a good faith belief in her authority to file the petition
(that is, a good faith erroneous belief that under 11 U.S.C.
§ 303(b)(3)(A) a partner of a limited liability partnership is
eligible, based on that status, to commence an involuntary
petition against the limited liability partnership).  The inquiry
can extend as well to her motives and knowledge relating to the
debtor's eligibility (or ineligibility) for involuntary relief
under § 303(h)(1).

attorney-client privilege or the work-product doctrine.

A.

I reject Beltway and Chafetz's contention that Arbitration
Counsel has foreclosed privilege-based challenges by failing to
provide a privilege log.  When a litigant requests his opponent's
litigation files, this raises obvious concerns regarding the
applicability of the attorney-client privilege and work product
doctrine.  The court is also mindful of case law requiring that a
privilege log be produced within a reasonable period of time when
a motion to quash is premised on privilege.  *See In re Chevron
Corp.*, 749 F. Supp.2d 170 (S.D.N.Y. 2010) (upholding a finding of
waiver where it was found that the party from whom discovery was
sought gained a tactical advantage by withholding the privilege
log while a motion to quash was pending); *Ala. Educ. Ass'n v.
Bentley*, 2013 WL 246417 (N.D. Alabama Jan. 22, 2013) (the
privilege log was relevant to the court's ruling on the motion to
quash).  Here, however, the *Motion to Quash* is premised not
merely on an assertion of privilege, but also on the undue burden
of having to respond to a subpoena that will require a
substantial privilege review.  Arbitration Counsel has made what
the court finds to be a reasonable effort to quantify the
privilege review that will be required if the subpoena is not
quashed, and there is no indication that deferring the production
of a privilege log pending the adjudication of the *Motion to*

7

*Quash* confers or was intended to confer a tactical advantage on
Arbitration Counsel.

Arbitration Counsel promptly sought relief from this court
in the face of what it perceived to be an unduly burdensome
subpoena.  Under the circumstances, it makes sense to permit
Arbitration Counsel to seek a judicial determination with respect
to the general applicability of the privilege or lack thereof
(*i.e.*, an adjudication with respect to the existence and scope of
any waiver made by Ms. Ray as to communications she had with
Arbitration Counsel), and an adjudication as to whether the
subpoena is overly broad both in terms of relevance and the time
period covered, before putting Arbitration Counsel to the task of
reviewing all of the responsive documents and generating a
detailed privilege log.

B.

Beltway contends that Ms. Ray has waived the attorney-client
privilege by invoking an advice of counsel defense in the
arbitration proceeding.  The basis for Beltway's contention that
the privilege has been waived is found in Ms. Ray's response to a
motion for summary judgment filed in the arbitration proceeding.
In that filing, Ms. Ray refers to her reliance on the advice of
counsel on eight separate occasions.  In a decision disposing of
a motion to compel filed by Beltway and Chafetz against Ms. Ray,
I addressed each alleged instance of Ms. Ray's reliance on the

8

advice of counsel in her arbitration filing.  And as explained in that decision, incident to Ms. Ray's reliance on an advice of counsel defense in the arbitration, Ms. Ray disclosed two confidential communications and has thus waived the privilege as to the subject matter of those two communications.[3]

First, on pages 40-41 of her response to the motion for summary judgment filed in the arbitration, Ms. Ray invoked reliance on the advice of counsel, stating:

> 225.  Mrs. Ray was advised by counsel that it is necessary and proper for any fees resulting from client fees should be deposited into a separate account. Because receipt of funds from client fees was imminent, Mrs. Ray, through Counsel opened the requisite accounts and disbursed funds in accordance with permissions already in place.
> 226.  Mrs. Ray's permission to disburse funds had not been withdrawn by Mr. Chafetz nor had any change in the accepted operating procedures been requested or made.
> 227.  Mr. Chafetz was fully aware BDS Systems would need to be reimbursed for expenses and paid for services rendered, from the initial fee settlements (Ex 27).
> 228.  Mr. Chafetz later withdrew permission for Mrs. Ray to disburse funds, at which time Mrs. Ray ceased making any disbursements without permission.
> 229.  Allegations that Mrs. Ray's actions, or the actions of her former Counsel were unlawful is false. The allegations are designed to morally assassinate Mrs. Ray and her former attorneys and to further drive a wedge between her and her former Counsel.
> 230. Furthermore, Mrs. Ray, at all times, was acting upon advice of counsel and without fraudulent intent.

*See Motion to Compel*, Ex. 9 at 40-41.  In doing so, Ms. Ray disclosed a confidential communication with her attorney, to wit,

---

[3]  I do not reach the question of how that waiver may or may not apply to any particular document that is withheld on the grounds that it is protected under the work product doctrine.

that her attorney advised her "that it is necessary and proper for any fees resulting from client fees should be deposited into a separate account."  It follows that she has waived the privilege with respect to the subject matter of that disclosure. I conclude that the subject matter of that disclosure includes communications regarding the handling of client fees and the appropriate account into which such fees should be deposited.

Second, in that same filing, *see Motion to Compel*, Ex. 9 at 125-27, and in response to an allegation of improper handling of funds, Ms. Ray asserts:

> c. At all times Mrs. Ray was acting on the advice of counsel.
>
> • The first attorney partner, Ms. Rutu Dalal insisted that all funds from fee settlements should be deposited into an IOLTA account. Mrs. [Ray] Had [sic] not [sic] access to that account (on her own accord)[.]
> • Mr. Chafetz disagreed and upon information and belief did not maintain the original BLG IOLTA account[.]
> • However, in speaking with numerous attorneys, Mrs. Ray learned that in fact, fee settlements should go into an IOLTA so she questioned her then counsel who also agreed the funds should be deposited into an IOLTA account.

*Motion to Compel*, Ex. 9 at 125-26.[4]

In so responding, Ms. Ray disclosed a confidential communication in support of her assertion that she was acting on

---

[4]  Ms. Ray gave an identical response to a different allegation of the summary judgment motion, repeating the same disclosure she made in this instance.

the advice of counsel in her handling of the funds.  She

describes a conversation she had with her attorney about fee

settlements and the propriety of those settlements being

deposited in IOLTA accounts.  Having disclosed this confidential

communication to defend against allegations of mishandling of

funds, Ms. Ray has waived the attorney-client privilege as to

communications relating to the subject of the proper way to

handle fee settlements.

C.

Beltway and Chafetz contend that even if the privilege was

not waived as to otherwise privileged communications, the crime-

fraud exception applies and the documents should be produced

accordingly.  Specifically, their opposition provides:

> Beltway has certainly met its burden to prove that Mrs.
> Ray unlawfully converted tens of thousands of dollars
> from Beltway, and used the adjudicative procedures to
> threaten and harass Mr. Chafetz in an effort to conceal
> her misconduct and otherwise prevent its discovery and
> evaluation.  In the absence of a privilege log . . . ,
> Beltway cannot evaluate whether the crime-fraud exception
> would apply to any valid assertion of the privilege,
> because Ms. Simon has not disclosed when any potentially
> privileged documents were created.

As the party seeking to overcome the privilege, it is Beltway and

Chafetz's burden to demonstrate the applicability of the

exception.  *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997).

Beltway and Chafetz would need to show that Ms. Ray "made or

received the otherwise privileged communication with the intent

to further an unlawful or fraudulent act . . . . [and she] must

11

have carried out the crime or fraud." *Id.  See also In re Application of Chevron Corp.*, 762 F. Supp.2d 242, 254 (D. Mass. 2010) (characterizing the crime-fraud exception as "narrow," and describing the required *prima facie* showing as a "heavy burden" to satisfy); *Conopco, Inc. v. Wein*, 2007 WL 1859757, at *9 (S.D.N.Y. June 28, 2007) (rejecting assertion that the crime-fraud exception applied in a case where the parties presented starkly different views of the case, and where the proponent of the exception failed to demonstrate that the attorney was a participant in the alleged fraudulent scheme and that his communications furthered that scheme).  To satisfy their burden of proof, Beltway and Chafetz would need to "offer evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud." *In re Sealed Case*, 107 F.3d at 49.  As noted by Beltway and Chafetz, without a privilege log, it is premature to evaluate the applicability of the exception.  If Beltway and Chafetz raise this issue anew after a privilege log is produced, they should be prepared to identify the specific evidence they contend, if believed by the trier of fact, would establish the elements of an ongoing or imminent crime or fraud such that the exception ought to apply.

D.

In addition to the burden imposed by the privilege review associated with a request for documents that by their very nature

raise privilege concerns, Arbitration Counsel contends that the

subpoena is overly broad because the requests are not limited to

any specific time period.  I agree and, where appropriate, as

discussed in part IV below, I will limit the required production

to the relevant time period.  *See HT S.R. L. v. Velasco*, 2015 WL

5120980 (D.D.C. Aug. 28, 2015) (upholding a subpoena but limiting

the scope of required production to the relevant time period).

E.

Pursuant to Fed. R. Civ. P. 45(d)(1):

[a] party or attorney responsible for issuing and serving
a subpoena must take reasonable steps to avoid imposing
undue burden or expense on a person subject to the
subpoena.  The Court for the district where compliance
is required must enforce this duty and impose an
appropriate sanction - which may include lost earnings
and reasonable attorney's fees - on a party or attorney
who fails to comply.

With this requirement in mind, and given that Arbitration Counsel

has demonstrated that the privilege review will be burdensome

under the circumstances, Arbitration Counsel is free to attempt

to propose to Beltway and Chafetz an approach to resolving this

matter short of Arbitration Counsel preparing a privilege log (as

to materials they contend are protected by the attorney-client

privilege or the work product doctrine).  If Beltway and Chafetz

reject such an approach, and demonstrably do so unreasonably,

then sanctions might be imposed under Rule 45(d)(1).  I have

struggled to devise some way of avoiding the necessity of a

13

privilege log, but the default rule under Fed. R. Civ. P.
45(e)(2) is that a privilege log should be prepared, and I am not
prepared to opine whether Beltway and Chafetz could be
unreasonable in rejecting some approach proposed to them short of
a privilege log.  Arguably they can reasonably insist upon a
privilege log as is commanded by Rule 45(e)(2).  Nevertheless,
Beltway and Chafetz must bear in mind their duty to mitigate
Arbitration Counsel's burden and expense under Fed. R. Civ. P.
45(d)(1).

Under Fed. R. Civ. P. 45(d)(2)(B)(ii), the court will
require Beltway and Chafetz to reimburse Arbitration Counsel for
"significant expense resulting from compliance" with the
subpoena, including attorney's fees spent generating a detailed
privilege log.  *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178,
1184-85 (9th Cir. 2013); *Linder v. Calero-Portocarrero*, 251 F.3d
178, 182 (D.C. Cir. 2001); *Storman's Inc. v. Selecky*, 2015 WL
224914, at *5, No. C07-5374 RBL (W.D. Wash. Jan. 15, 2015)
(attorney's fees and paralegal costs are "'expenses resulting
from compliance,' whether they are completed by in-house counsel
or outside attorneys" (citation omitted)).

IV

In light of the foregoing, I rule as follows with respect to
the remaining document requests.

**Request No. 1** seeks "[t]he documents submitted *ex parte* to

14

the Honorable Richard A. Levie in connection with the Arbitration, and which Judge Levie ordered produced in that matter." At the December 2, 2015 hearing, the attorney for Arbitration Counsel explained that this consists of two documents produced to Judge Levie for *in camera* review, and which Judge Levie directed Ms. Ray to produce based upon his conclusion that the documents were not privileged. The attorney for Arbitration Counsel went on to argue that the documents belong to Ms. Ray, the only reason they are in the possession of Arbitration Counsel is because Arbitration Counsel was serving as Ms. Ray's attorney, and Ms. Ray is thus the more appropriate party from whom to seek the documents. There is no suggestion that producing the documents will put Arbitration Counsel to any undue burden. As discussed above, I reject the argument that the availability of documents from other sources is a basis for quashing the subpoena. Although it may be instructive, I do not believe I am bound by the arbitrator's determination regarding whether the documents are privileged. Accordingly, if Arbitration Counsel believes the arbitrator erred and that the privilege does, in fact, apply, Arbitration Counsel shall submit the documents to the court for *in camera* review. Otherwise, Arbitration Counsel is directed to produce the documents requested in Request No. 1 without further delay.

**Request No. 3** seeks "[a]ll communications between You and

15

Susan Ray concerning the decision to initiate the Arbitration, including any communications regarding the merits thereof." Although these documents may be protected by the attorney client privilege if the crime-fraud exception is not shown to apply, this request seeks documents that are reasonably calculated to lead to the discovery of admissible evidence as to Susan Ray's subjective bad faith in filing the bankruptcy petition (and possibly the issue of objective bad faith in filing the bankruptcy petition).

**Request No. 5** seeks "[a]ll communications between You and Susan Ray concerning payments from Beltway (directly or indirectly through some other entity, such as A.P. Carlton's law firm or BLG NC, Inc.) to BDS Systems, John Ray, Susan Ray, A.P. Carlton, or any affiliate, for any purpose whatsoever." I find that any **prepetition** communications falling within the scope of this request must be produced, subject to Arbitration Counsel's continued right to assert privilege over any of the documents. Production of postpetition communications would not be reasonably calculated to bear on Ms. Ray's state of mind or her objective reasonableness in filing the petition.

**Request No. 7** seeks "[a]ll communications between You and Susan Ray concerning the financial and accounting records of Beltway." I will allow this request, but the request is modified to reflect that the relevant time period extends only up until

the petition date, and Arbitration Counsel remains free, subject to the waiver described above, to withhold documents on the basis of privilege.

Arbitration Counsel has argued that it has already produced financial and accounting records to Beltway and Chafetz in the arbitration, and requiring Arbitration Counsel to do so here again is both duplicative and burdensome.  There is no simple way for this court to evaluate whether a prior document production adequately satisfies a newly propounded request in this proceeding (which is not just for "financial and accounting records" but for communications relating to such "financial and accounting records"), and I find that the burden imposed on Arbitration Counsel in reviewing its files and listing documents produced in the arbitration does not justify excusing Arbitration Counsel from including such documents in its list of documents responsive to the subpoena.  To the extent that a document *was* produced to Beltway and Chafetz in the arbitration, it need not be produced absent a showing by Beltway and Chafetz that they no longer have the document.

**Request No. 9** seeks "[a]ll communications between You and Susan Ray concerning disclosures to Marc Chafetz regarding the financial and accounting records of Beltway."  The court fails to see how the universe of documents responsive to this request would not already be captured by Request No. 7 given that any

communication regarding disclosures to Marc Chafetz regarding the
financial and accounting records would also qualify as a
communication "concerning the financial and accounting records of
Beltway."  I will not require Arbitration Counsel to respond
separately to this request, with the understanding that the
communications described in Request No. 9 fall within the scope
of documents sought in Request No. 7, and to the extent they are
not withheld on grounds of privilege, they are to be produced
(except any document produced previously in the arbitration
proceeding as to which Beltway and Chafetz fail to show that they
no longer have the document).

**Request No. 11** seeks "[a]ll communications between You and
Susan Ray concerning the lawsuit that Mrs. Ray, through BDS
Systems, filed against Beltway in North Carolina."  Beltway and
Chafetz are trying to establish the coordinated use of litigation
on multiple fronts as abusive, and to the extent Ms. Ray was
communicating with Arbitration Counsel about this other
proceeding, such communications are relevant.  Subject to
Arbitration Counsel's continued right to withhold documents from
production based on the assertion of privilege, I overrule
Arbitration Counsel's objection to this request.

**Request No. 13** seeks "[a]ll communications between You and
Susan Ray concerning the lawsuit that John Ray filed against
Beltway in North Carolina."  As with Request No. 11, and subject

18

to Arbitration Counsel's continued right to withhold documents
from production based on the assertion of privilege, I overrule
Arbitration Counsel's objection to this request.

**Request No. 15** seeks "[a]ll communications between You and
Susan Ray concerning the escrow of Beltway funds." Beltway's
financial condition and how it was managing its funds, pre-
petition, is relevant to the issues before this court. This
request will stand, but the court will limit the required
production to the time period prior to the filing of the petition
in this case. Although Arbitration Counsel remains free to
assert privilege to the extent it identifies responsive
communications that are both privileged and not within the scope
of the waiver described above, any privilege log it produces
should provide sufficient detail to make clear why the waiver
does not apply.

**Request No. 17** seeks "[a]ll communications between You and
Susan Ray concerning the source of funds Mrs. Ray provided to You
as a retainer in connection with the Arbitration." If the source
of funds was Beltway, such communications should be captured by
requests the court has already allowed regarding payments from
Beltway to Susan Ray as well as the general financial and
accounting records of Beltway. Beltway and Chafetz, however,
contend that Arbitration Counsel engaged in misconduct relating
to the disbursement of Beltway's funds, including the creation by

19

Mr. Carlton of a new company, BLG NC, Inc., which Beltway and
Chafetz allege was used to disburse funds to Mrs. Ray and her
attorneys.  Communications relating to payments made by Beltway,
including payments that were made using another entity as a
conduit, bear on the financial condition of Beltway and are thus
relevant to this proceeding.  Subject to Arbitration Counsel's
continued right to withhold documents on the basis of privilege,
I will allow this request to stand and Arbitration Counsel is
directed to produce any non-privileged responsive documents.

**Request No. 19** seeks "[a]ll communications between You and
Susan Ray concerning Beltway's actual or potential liabilities to
any third parties."  The documents requested seek information
directly relevant to the issues remaining before the court, and
subject to Arbitration Counsel's continued right to withhold
documents under the assertion of privilege, they shall produce
the requested documents.  I will, however, modify the request to
limit the required production to the time period prior to the
filing of the petition.

**Request No. 21** seeks "[a]ll communications between You and
Susan Ray concerning the involuntary bankruptcy proceedings John
Ray initiated against Beltway."  Similarly, request No. 23 seeks
"[a]ll communications between You and Susan Ray concerning the
involuntary bankruptcy proceedings Susan Ray initiate[d] against
Beltway."  Subject to its continued right to withhold documents

on the assertion of privilege, I overrule Arbitration Counsel's objection as to these requests.

**Request No. 25** seeks "[a]ll communications between You and Susan Ray concerning reimbursable expenses actually incurred by Mrs. Ray, BDS Systems, or any affiliate, on behalf of Beltway." Because expenses incurred by Beltway post-petition have no bearing on Ms. Ray's knowledge of Beltway's financial condition pre-petition, Arbitration Counsel will only be required to produce pre-petition communications. Subject to its continued right to withhold documents on the basis of privilege, Arbitration Counsel's objection to this request is otherwise overruled.

V

The parties should submit an agreed proposed order disposing of the *Motion to Quash* pursuant to this decision, and addressing such matters as the search terms to be used in identifying responsive documents. In the event the parties are unable to agree upon the terms of such an order, the court will hold a hearing on **February 2, 2017, at 2:00 p.m.**, to finalize the terms of the order.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.