The document below is hereby signed.

Signed: November 1, 2017



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| BELTWAY LAW GROUP, LLP, | ) | Case No. 14-00380 |
| | ) | (Chapter 7) |
| Debtor. | ) | Not for Publication in the |
| | ) | Bankruptcy Reporter |

MEMORANDUM DECISION AND ORDER RE
ELIZABETH SIMON AND VOYRS, SATER, SEYMOUR
AND PEASE LLP'S PETITION FOR REIMBURSEMENT
OF FEES EXPENDED IN RESPONSE TO THIRD-PARTY SUBPOENA

Elizabeth Simon and the law firm Voyrs, Sater, Seymour and Pease LLP ("Arbitration Counsel") have petitioned the court for reimbursement of fees expended in response to a third-party subpoena by the debtor Beltway Law Group, LLP ("Beltway") and Marc Chafetz (Dkt. No. 200). Beltway and Chafetz object to the petition because they claim most of the documents were not responsive, Arbitration Counsel did not follow the "simple search" that Beltway and Chafetz gave them, and the need for the subpoena was based on the Arbitration Counsel's alleged previous bad behavior in an earlier arbitration case. Upon consideration of the papers, I will grant in part and deny in part the Petition.

I

On September 1, 2015, Beltway and Chafetz issued a subpoena to Arbitration Counsel seeking numerous documents in relation to an arbitration proceeding before the American Arbitration Association where Arbitration Counsel represented Susan Ray, a former member of the Debtor and the filer of this bankruptcy case. Arbitration Counsel challenged the subpoena and filed a *Motion to Quash* on September 17, 2015 (Dkt. No. 84). The court issued a compliance order on January 27, 2017 (Dkt. No. 151) that granted in part and denied in part the *Motion to Quash*. Also, in that order, the court further held:

> Under Fed. R. Civ. P. 45(d)(2)(B)(ii), the court will require Beltway and Chafetz to reimburse Arbitration Counsel for "significant expense resulting from compliance" with the subpoena, including attorney's fees spent generating a detailed privilege log.

Arbitration Counsel are now seeking this reimbursement for expenses in compliance with two requests under the subpoena, Request No. 1 for *ex parte* documents submitted to the Honorable Richard A. Levie, and Request No. 2 for communications between Arbitration Counsel and John Ray.

At a hearing held before the court on September 19, 2017, at which counsel for Beltway and Chafetz did not appear, counsel for Arbitration Counsel asked the court to consider the petition on the papers and the court took the petition under advisement. The court now enters its decision.

II

Fed. R. Civ. P. 45(d)(2)(B)(ii) allows a court to compel an objecting nonparty to comply with a subpoena, but stipulates that the court "must protect a person who neither a party nor a party's officer from significant expense resulting from compliance." This is a mandatory fee shifting provision when compliance with a subpoena amounts to a significant expense. *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001). When addressed with these petitions, the court must determine, (1) whether compliance with the subpoena imposes any expenses, and (2) whether those expenses are significant. *Id.*

A. Expenses in Compliance With the Subpoena

The court must first determine whether the expenses are in compliance with the subpoena. The District Court explained in *G & E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 316 (D.D.C. 2016):

> It is critical, therefore, that only expenses that result from, and therefore, are caused by, the order of compliance are potentially compensable. Simply because a non-party undertook certain tasks and incurred associated expenses in the aftermath of an order compelling compliance with a subpoena does not mean that those costs resulted from that order. In other words, only reasonable expenses are compensable. An unreasonable expense, even undertaken in some sense as a response to a subpoena, does not result from that subpoena.

I will first note that Beltway and Chafetz do not oppose the fees associated in compliance with Request No. 1, related to the

Levie Documents and the production of a privilege log.  Further, the court has already held that it would award Arbitration Counsel reimbursement of "'significant expenses resulting from compliance' with the subpoena, including attorney's fees spent generating a detailed privilege log."  The remainder of this section deals with Request No. 2, production of the Ray documents.

Beltway and Chafetz put forth three reasons why the expenses put forth by Arbitration counsel are not in compliance with the subpoena: (1) only a small number of the emails were responsive, (2) Arbitration Counsel did not use the search offered by Betlway and Chafetz, and (3) it was Arbitration Counsel's alleged bad behavior during the arbitration case that led to the need for discovery in the first place.  The first argument is partially correct but does not address most of the fees petitioned for by Arbitration counsel.  The other two contentions are unavailing.

Beltway and Chafetz argue that of the 1,564[1] documents produced by arbitration counsel, only 52 were actually responsive to the subpoena.  To be clear, request No. 2, as approved by the court's compliance order, asks for: "All communications to which You and John Ray were a party, regardless of whether other

---

[1] Arbitration Council assert in their initial petition that they produced 1,654 documents, but Beltway and Chafetz informed the court that this was a typographical error and the actual number of documents produced was 1,564.

individuals were also parties." The initial request was so broad, that on its face Arbitration Counsel were in full compliance. Nevertheless, Beltway and Chafetz were entitled to narrow their request by communicating with Arbitration Counsel directly and specifying which documents they required. According to Beltway and Chafetz, Arbitration Counsel were informed that they should have excluded all emails sent and received by Chafetz, but Arbitration Counsel nonetheless submitted 1,375 such documents. Additionally, Beltway and Chafetz informed Arbitration Counsel that they should have also excluded communications that were forwarded to Simon, yet over 130 such documents were produced. Arbitration Counsel did not dispute this in their reply. The court agrees that the production of these documents specifically excluded by Beltway and Chafetz was not in compliance with the subpoena and the compliance order. Therefore, Beltway and Chafetz should not be required to reimburse for the production of those documents.

Nevertheless, even if the court excludes the costs of production of documents that Beltway and Chafetz excluded, that expense is only related to the final line item in Arbitration Counsel's Exhibit 1 describing the tasks and fees associated with compliance with the subpoena. The final line item, "download and review documents produce to Tim Clinton" is the only line item dealing with production of documents. All other expenses deal

with the search and review of John Ray documents to see if they are in compliance. Even if Arbitration Counsel were not required to produce communications with Chafetz, or documents forwarded to Simon, they would still need to review such documents to determine whether the documents must be produced. Not producing those documents would not have reduced the time searching or reviewing them. Thus all the remaining expenses are expenses in compliance with the subpoena.

Beltway and Chafetz argue that the remaining fees are unreasonable because they had provided Arbitration Counsel a "simple search" which would have produced the required documents in a significantly less amount of time. Beltway and Chafetz have not produced evidence, however, sufficient to prove that the search they provided Arbitration Counsel would have reduced the compliance time or cost. It is Beltway and Chafetz's belief that following their search would have reduced time and cost, but they have not produced an affidavit from a technology expert to show that their method would have produced the desired result. Additionally, Beltway and Chafetz's method may have required Arbitration Counsel to hire a technology expert to conduct the search, which would have induced a cost, and there is no evidence to show that the cost of hiring a technology expert would have been less than the final cost incurred by Arbitration Counsel. Further, there is no evidence that the time reviewing documents

for compliance would have been reduced.  Moreover, Arbitration Counsel were entitled to conclude that it would be more cost-effective and simple to conduct the search of the documents in the manner adopted by Arbitration Counsel and reject Beltway and Chafetz's search for their own.

Beltway and Chafetz's final argument that the whole reason for the subpoena is due to Arbitration Counsel's alleged bad acts in a previous arbitration case are unpersuasive and irrelevant. The alleged bad conduct took place outside the proceeding before the court.  This court will not consider alleged bad behavior occurring in another case in determining whether a party is entitled to protection from significant expense under Fed. R. Civ. P. 45.

As noted above, the court agrees that Arbitration Counsel cannot be reimbursed for expenses in producing documents that Beltway and Chafetz asked to be excluded.  The final line item for "Download and review documents to produce to Tim Clinton" is the only fee related to production.  However, Arbitration Counsel has not itemized how much of the fees went toward each type of document produced.  Because the court cannot determine how much of the fee would be compensable and how much to deduct, the court will deny the whole amount of $637.50.  Therefore, the court finds that Arbitration Counsel expended $9,262.50 in compliance with production of Request No. 2.

B.  Significant Expense

The next question before the court is whether the amount expended in compliance with the subpoena and compliance order is a significant expense.  The expense for compliance with Request No. 1, Levie documents, totals $825 and the expense for compliance with Request No. 2, Ray documents, totals $9,262.50, for a total "expense resulting from compliance" of $10,087.50.  The court has no difficulty finding that this amount is significant.  The court in *G & E Real Estate, Inc.* found that $3,148.44 was a significant expense, and the D.C. Circuit in *Linder* cited approvingly to *Williams v. City of Dallas*, 178 F.R.D. 103, 113 (N.D. Tex. 1998), which found $9,000 was significant.  Whereas the Arbitration Counsel's fee exceeds both these examples, the court easily finds that this is a significant expense.

### III

It is thus

ORDERED that Arbitration Counsel's petition for reimbursement of fees expended in compliance with the third-party subpoena (Dkt. No. 200) is GRANTED in part and Beltway Law Group, LLP and Marc Chafetz shall reimburse Elizabeth Simon and Voyrs, Sater, Seymour and Pease LLP $10,087.50.  It is further

ORDERED that Arbitration Counsel's petition is otherwise DENIED.

[Signed and dated above.]

Copies to: John Ray; recipients of e-notification of filings.